IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARVIN LEE FURRY                                    Case No. 1:14-cv-01862-MA

          Plaintiff,                                 OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

         Defendant.

KATHRYN TASSINARI
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

    Attorney for Plaintiff

JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

L. JAMALA EDWARDS
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Marvin L. Furry seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on May 31, 2012, alleging disability beginning March 1, 2012, due to depression, anger issues, and chronic pain in the lower extremities. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). An ALJ held a hearing on March 18, 2014, at which plaintiff appeared via video with his attorney and testified. A vocational expert, Lynn A. Jones, also attended the hearing and testified. On June 18, 2014, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1963, plaintiff was 50 years old on the date of the ALJ's unfavorable decision. Plaintiff completed the tenth grade. Plaintiff has past relevant work as a diesel mechanic helper, construction laborer, and janitor.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine*

*v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since May 31, 2012. At step two, the ALJ found that plaintiff had the following severe impairments: major depressive disorder versus unspecified depressive disorder; unspecified anxiety disorder; unspecified personality disorder; amphetamine dependence in early remission, and cannabis use disorder-severe. At step three, the ALJ found that plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity ("RFC") for a full range of work at all exertion levels but with the following limitations:

> [Plaintiff] is able to understand, remember, and carry out only simple instructions and tasks, which can be learned in 30 days or less. He is able to tolerate only "isolated work," defined as follows: occasional incidental public contact and no work directly with public, occasional incidental coworker contact and no group tasks, and occasional supervisor contact, generally limited to a visit from the supervisor one to two times per shift to give work assignments and answer questions. Otherwise, the claimant generally will be left alone to complete tasks.

Transcript of Record ("Tr."), ECF No. 11 at 20.

At step four, the ALJ found that plaintiff is able to perform his past relevant work as a janitor/custodian. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from May 31, 2012, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ erred in evaluating plaintiff's credibility; (2) the ALJ failed to properly consider the opinions of examining psychologists; (3) the ALJ erred at Step Two; and (4) because of these errors, the hypothetical to the vocational expert was invalid.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## I.    The ALJ Did Not Err in Evaluating Plaintiff's Credibility

### A.    Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 416.929. The first stage is a

threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

### B.    Analysis

At the March 18, 2014 hearing, plaintiff testified that he stopped working in 2008 due to a lack of jobs, but alleges an onset date of disability of March 1, 2012. Tr. 40, 42. Plaintiff testified to having difficulty concentrating on tasks and socializing with supervisors. Tr. 43. Plaintiff also testified to experiencing pain in his right knee and left hip. *Id.* Specifically, plaintiff testified that he is unable to extend his right knee fully without significant pain. *Id.* Plaintiff further testified to briefly attending mental health counseling and taking psychiatric medications. Tr. 44-45. However, plaintiff testified that he stopped taking the medications because of side effects such as insomnia and shaking.

Tr. 45. Plaintiff also testified that he can walk one or two blocks before needing to sit down and rest for a half hour due to pain in his hip and knee. *Id.* Plaintiff testified that he is able to lift ten pounds but experiences no pain or limitation in his upper extremities. Tr. 45. Plaintiff also testified that he spends the majority of the day watching television and occasionally does his laundry and vacuuming. Tr. 46.

In a June 30, 2012 Adult Function Report, plaintiff noted that he walks outside on a daily basis. Tr. 221. Plaintiff also noted riding his bicycle to travel places. *Id.* Plaintiff indicated that he is able to pay bills and manage a savings account and a checkbook. *Id.* Plaintiff testified that he "cannot stand stupid people," and has difficulty socializing with other people. Tr. 223. Plaintiff further noted that he can walk three blocks without stopping to rest and can concentrate for 15-20 minutes at a time. *Id.* Plaintiff testified to having difficulty getting along with authority figures. Tr. 224.

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that cause symptoms resulting in some limitations on work activity, but his subjective complaints and alleged limitations are not fully credible. Tr. 25. A careful review of the record shows that the ALJ provided four clear and convincing reasons to discredit plaintiff's testimony, citing specific record evidence, which undermine his subjective complaints.

### 1. inconsistent with the medical record

Contrary to plaintiff's suggestion, the ALJ specifically found plaintiff's objective medical record is inconsistent with his subjective allegations of debilitating symptoms. Tr. 18. When the claimant's own medical record undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Morgan v.*

*Commissioner Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Carmickle*, 533 F.3d at 1161. The ALJ's findings are supported by substantial evidence in the record.

As the ALJ noted, the medical findings in the record do not corroborate plaintiff's allegations of severe pain. For example, the August 2012 x-rays of plaintiff's left hip and right knee revealed no abnormal findings. Tr. 379, 380. An August 2013 left hip x-ray again revealed unremarkable findings. Tr. 453. Treating orthopedic surgeon William T. Turner, M.D., noted that plaintiff's November 2012 right knee MRI was within normal limits. Tr. 399, 412. Similarly, the objective findings are minimal. A May 2012 examination revealed mild tenderness in the left hip, full range of motion, and an absence of swelling or deformity. The examination indicated essentially unremarkable findings of the right knee. Tr. 359. A September 2012 examination noted mild tenderness and limited range of motion secondary to pain. Tr. 387. Indeed, Dr. Turner diagnosed chronic patellar malalignment with no signs of internal derangement or degeneration of the joint. Tr. 412.

Furthermore, the ALJ appropriately found that although plaintiff alleges severe deficits in attention and concentration, his mental evaluations are inconsistent with this complaint. For example, a February 2011 examination noted intact immediate and remote memory, normal psychomotor activity and speech, and logical thought content. Tr. 302. In a May 2012 examination, plaintiff's counselor noted normal speech, memory, and cognition. Tr. 315. In fact, plaintiff's mental status examinations generally indicate intact memory and good attention and concentration. *See generally*, Tr. 337, 355, 371, 438, 463.

While the record reveals a voluntary admission to inpatient treatment at the Lower Columbia Mental Health Center (LCMHC) for a week in April 2012, plaintiff made a quick recovery. Tr. 333.

7 - OPINION AND ORDER

Plaintiff requested the admission because he reported having thoughts of killing his roommates. Tr. 334. While admitted, plaintiff reported a significant decrease in homicidal ideations and an increase in impulse control with anti-depressants. Tr. 332-33. Upon discharge, LCMHC indicated a reduction in plaintiff's psychiatric symptoms, and plaintiff's treating nurse practitioner noted that she was not concerned about plaintiff harming other individuals. Tr. 348, 351. Moreover, the record shows no further hospitalizations for mental health issues. To be sure, as discussed above, plaintiff's mental status examinations following his admission have been unremarkable. Tr. 337, 355, 371.

Although plaintiff insists on a different interpretation of the evidence, I conclude that the ALJ made logical inferences from the record to support her conclusions. Because the ALJ's interpretation is rational and is supported by substantial evidence in the record as a whole, it will not be disturbed. *See e.g., Molina*, 674 F.3d at 1111(ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record). In short, the ALJ reasonably concluded that the objective medical evidence is inconsistent with the degree of plaintiff's subjective symptoms and appropriately discounted his credibility on this basis.

### 2. minimal treatment and noncompliance

The ALJ cited to plaintiff's minimal medical treatment and failure to take prescribed medication properly as an indication of a less than good faith effort to achieve medical improvement. Specifically, the ALJ noted that plaintiff failed to comply with prescribed psychiatric medication and follow up on counseling services. Tr. 25. An "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The record supports the ALJ's finding of noncompliance. Treatment providers have

documented plaintiff's noncompliance with psychiatric medications on several occasions. *See generally*, Tr. 316, 353, 370, 419.

Plaintiff argues that he ceased taking his psychiatric medication due to significant side effects such as shaking, insomnia, and "feeling like a zombie." Plaintiff's Br. (ECF 16) at 14. I disagree.

As the ALJ noted, the record does not appear to support plaintiff's allegations of intolerable side effects from psychiatric medications. *Cf.* Social Security Ruling 96-7p, 1996 WL 374186, *8 (July 2, 1996) (ALJ should consider intolerable side effects as an explanation for noncompliance with prescribed medications). At the hearing, plaintiff testified to ceasing anti-depressants because he experienced side effects such as shaking and insomnia. Tr. 45. However, the record reveals that plaintiff reported varying reasons to treatment providers for his noncompliance. For example, in a February 2011 examination, plaintiff noted that he was not currently taking anti-depressants due to their ineffectiveness. Tr. 298. In May 2012, plaintiff reported to treating nurse practitioner Zoe Carlson that he ceased taking psychiatric medications because they made him tired. Tr. 312. In July 2012 examination, plaintiff reported discontinuing prescribed psychiatric medication after two days due to how they made him feel. Tr. 374. Based on plaintiff's vague and varied report of side effects, it is reasonable for the ALJ to discredit plaintiff's testimony on the basis of his noncompliance.

Additionally, although plaintiff testified that he felt counseling did not work, the record shows he did not attend more than one counseling session. Tr. 44. In a December 2012 initial evaluation, counselor Christopher Siedow advised plaintiff to attend treatment for mental health for 90 days to "express and process his frustrations." Tr. 415. However, there are no further counseling notes from Mr. Siedow or any other treatment provider. Moreover, as the ALJ indicated, plaintiff's lack of finances or medical insurance cannot entirely account for his minimal medical treatment. Tr.

25. Plaintiff has demonstrated the ability to seek assistance through free clinics for both his physical and mental symptoms. *See generally,* Tr. 296, 307, 311-12, 414, 418, 452. Plaintiff's refusal to participate in counseling contradicts the severity of his alleged symptoms. Therefore, the ALJ's reasoning on this point is supported by substantial evidence.

### 3. inconsistent statements

The ALJ cited to plaintiff's inconsistent statements at the hearing and in the medical record regarding his allegations and drug use as a basis to discount his testimony. An ALJ may consider prior inconsistent statements concerning symptoms and "other testimony by [plaintiff] that appears less than candid in weighing plaintiff's credibility." *Tommasetti*, 533 F.3d at 1039. As the ALJ noted, plaintiff alleged that he has difficulty walking due to pain in his lower extremities. Tr. 26, 45. The ALJ then noted that the record shows that plaintiff walks most places. Tr. 26. For example, a March 2011 treatment note indicated that plaintiff walked a "couple of miles" to the medical provider's office. Tr. 307. In January 2013, plaintiff reported to a consultative examiner that he walks to the library on a daily basis. Tr. 438.

Moreover, the ALJ found that plaintiff made inconsistent statements to treatment providers regarding his past and current use of alcohol and drugs. As the ALJ noted, in a July 2012 examination, plaintiff denied past consumption of alcohol and use of illicit drugs. Tr. 370. In contrast, in January 2013, plaintiff admitted to a history of substance abuse beginning at age 13 and reported sobriety as of April 2012 to consultative examiner Jan G. Johnson, Ph.D. Tr. 433. In fact, Dr. Johnson tentatively diagnosed plaintiff with polysubstance dependence. Tr. 435. Plaintiff also reported ongoing consumption of alcohol and marijuana in May 2014 to consultative examiner

Gregory A. Cole, Ph.D. Tr. 461. The record provides ample support for the ALJ's finding of inconsistent statements regarding plaintiff's use of drugs and alcohol.

However, the ALJ inappropriately found plaintiff's allegation of homicidal ideation is inconsistent with the fact that he lacks a documented history of violence against others. Tr. 26.It is not inconsistent for plaintiff to experience thoughts of harming other people but decide not to act on those thoughts. The record does not support this as a true inconsistency within the record. Nevertheless, substantial evidence supports the ALJ's finding of plaintiff's inconsistent statements concerning his substance abuse and allegations of pain. Thus, I conclude that the ALJ appropriately discredited plaintiff on the basis of inconsistent statements.

### 4. poor work history

Finally, the ALJ discredited plaintiff because his work history is inconsistent with his alleged onset date of disability. Tr. 557. Evidence of a poor work history that suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony alleging that he is unable to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In this case, the ALJ found that plaintiff ceased working four years prior to his alleged onset date for reasons unrelated to his medical impairments. Tr. 25. At the hearing, plaintiff testified that he stopped working in 2008 due to a lack of jobs available. Tr. 42. Plaintiff's argues that when he was applying for disability, he was homeless and perhaps did not have a calendar of his medical appointments. Plaintiff asserts that it is not unreasonable to assume that he estimated his alleged onset date of disability. Plaintiff's argument is meritless.

As the ALJ noted, the record reveals that plaintiff's March 1, 2012 alleged onset date of disability does not correspond with a worsening of his impairments or sudden trauma. Tr. 25. While

plaintiff requested voluntary admission to inpatient psychiatric treatment on April 30, 2012, it is unclear as to why plaintiff alleged a date two months prior to his decline in mental functioning. Tr. 333. The ALJ's interpretation of the record is reasonable. *See Molina*, 674 F.3d at 1111(ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record). Thus, the ALJ's discrediting plaintiff on the basis of a lack of motivation to work is supported by substantial evidence.

Accordingly, I conclude that this basis combined with the ALJ's other three reasons amount to clear and convincing support, backed by substantial evidence, for rejecting plaintiff's subjective symptom statements.

## II.    The ALJ Properly Evaluated the Opinions of Examining Psychologists

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted); 20 C.F.R. § 416.927(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148(9th

Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

### A.    Fred Kemp, Ph.D.

In a July 28, 2012 consultative examination, Fred Kemp, Ph.D. noted a depressed mood, congruent affect, and normal speech with coherent and goal directed thought processes. Tr. 371. Dr. Kemp indicated that plaintiff completed serial sevens quickly and accurately and recalled four past presidents. *Id.* Dr. Kemp also noted intact recent memory as plaintiff could recall six digits forward and five digits backward. *Id.* Dr. Kemp noted that plaintiff reported difficulty getting along with supervisors and completing tasks. Tr. 372. Dr. Kemp diagnosed plaintiff with Depression, not otherwise specified (NOS). Tr. 372. Moreover, Dr. Kemp opined that plaintiff has some difficulty with completing tasks and following instructions and has significant problems with anger, especially towards authority figures. Tr. 372.

In a February 1, 2014 mental RFC assessment, Dr. Kemp opined that plaintiff is markedly limited in his ability to interact with the general public, accept instructions and criticism from supervisors, and maintain socially appropriate behavior. Tr. 458. Dr. Kemp also opined that plaintiff is moderately limited in his ability to carry out simple instructions and perform activities within a schedule. Tr. 457. Dr. Kemp indicated that he based his assessment on plaintiff's work history, appearance, lack of education, content of thought, social functioning, poor prognosis, and functional assessment. Tr. 459. Dr. Kemp provided this RFC assessment almost 18 months after his initial examination of plaintiff and did not document any additional examinations or interactions with plaintiff in the interim.

Because Dr. Kemp's opinion was contradicted,[1] the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at 1216. The ALJ discussed Dr. Kemp's opinions and accorded the opinions "little weight" for several reasons as discussed below. Having carefully reviewed the record, I conclude that the ALJ's reasoning is supported by substantial evidence.

Contrary to plaintiff's argument, the ALJ properly rejected Dr. Kemp's opinions because he relied heavily on plaintiff's discredited subjective complaints. It is well-settled that a physician's opinion premised upon a claimant's properly discounted subjective symptoms and limitations may be disregarded. *Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). As discussed above, the ALJ provided four clear and convincing reasons supported by substantial evidence to reject plaintiff's testimony.

Dr. Kemp's assessment of moderate and marked limitations in the areas of concentration, persistence, and pace appears to rely on plaintiff's self-report of symptoms. Tr. 457-459.  In his examination report, Dr. Kemp opined that plaintiff's prognosis is poor "because he experiences severe pain which results in difficulties concentrating and problems with memory." Tr. 372. In fact, Dr. Kemp documented an essentially benign mental status examination, including *intact memory, concentration*, and an absence of psychomotor agitation. Tr. 371. As the ALJ noted, Dr. Kemp's opinion regarding plaintiff's physical pain is far outside his expertise as a psychologist. *See Holohan*

---

[1] In a March 25, 2013 Mental RFC Assessment, nonexamining physician John F. Robinson, Ph.D., opined that plaintiff can understand and remember simple and most detailed instructions, perform simple routine tasks and some detailed tasks, but is limited to infrequent social interaction with coworkers, minimal intrusive supervision, and no contact with the general public. Tr. 79-81.

*v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (more weight is given to the opinion of a specialist concerning matters in his specialty than to the opinion of nonspecialist). In this case, Dr. Kemp did not review plaintiff's physical medical records nor diagnose a psychological component of plaintiff's pain.

Moreover, as the ALJ noted, although Dr. Kemp indicated easily establishing a rapport with plaintiff, he opined marked social limitations, which appear to rely on plaintiff's report of anger issues. Tr. 27, 370-72. Plaintiff reported to Dr. Kemp that he is easily irritated by people and has a short temper. Tr. 369. In relying on plaintiff's self-report, Dr. Kemp noted that plaintiff "has obviously had significant problems with anger, particularly with authority figures." Tr. 372. Based on the information presented to Dr. Kemp, the ALJ could reasonably find that his opinion was based in part on plaintiff's subjective allegations. Accordingly, the ALJ's reasoning is supported by substantial evidence.

Next, the ALJ discredited Dr. Kemp's opinions because they are inconsistent with the record as a whole. A medical opinion's inconsistency with the objective medical record may constitute an adequate reason to discredit that opinion. *Tommasetti*, 533 F.3d at 1041. As discussed above, aside from plaintiff's voluntary one week hospital admission, the record documents unremarkable mental status evaluations. *See generally*, Tr. 337, 355, 371, 438, 463. Thus, substantial evidence supports the ALJ's rationale. Moreover, the physical examinations are also relatively benign. For example, a March 2011 treatment note reveals normal gait and coordination, intact range of motion in all extremities and back, and an absence of tenderness in both knees. Tr. 319-20. A May 2012 examination notes essentially normal objective findings aside from mild tenderness in the right knee. Tr. 359. Similarly, plaintiff's right knee x-rays and MRI are unremarkable. Tr. 380, 399. Thus, the

ALJ's rejection of Dr. Kemp's opinions on the basis of inconsistency with the record is supported by substantial evidence.

Finally, the ALJ rejected Dr. Kemp's February 2014 mental RFC because Dr. Kemp completed the assessment 18 months after the initial examination with no further interaction with plaintiff since the first consultation. Dr. Kemp did not clarify the nearly two year delay, which questions the reliability of his opinion, in providing his assessment,. To the extent that plaintiff argues that Dr. Kemp's mental RFC relies on his initial evaluation, this argument misses the mark. As discussed above, Dr. Kemp's examination findings are inconsistent his opinions of moderate and marked limitations. Tr. 371. Thus, it is reasonable for the ALJ to discredit Dr. Kemp's opinions on this basis.

In summary, I conclude that the ALJ did not err in evaluating Dr. Kemp's opinions, and has provided three specific and legitimate reasons backed by substantial evidence in the record as a whole.

### B.    Jan Johnson, Ph.D.

In a January 15, 2013 examination, Dr. Johnson noted an anxious affect, depressed mood but cooperative demeanor. Tr. 438. Dr. Johnson also noted perfect immediate recall of three objects, adequate fund of general knowledge, an ability to perform serial seven calculations with two errors, and adequate abstract reasoning skills. Tr. 438. Dr. Johnson noted that plaintiff reported problems with depression, including difficulty sleeping and homicidal thoughts. Tr. 438.

Dr. Johnson diagnosed depressive disorder (NOS), amphetamine dependence early full sustained remission, and polysubstance dependence (rule out). Tr. 435. Dr. Johnson opined that plaintiff has the cognitive ability to engage in normal labor-oriented workplace activity but his

psychiatric condition will affect his motivation to maintain appropriate work place performance. Tr. 436. Dr. Johnson also opined that plaintiff's depression would affect his motivation to complete tasks. *Id.* The ALJ provided two specific and legitimate reasons for according Dr. Johnson's opinion "some weight." Having carefully reviewed the record, I conclude that the ALJ's reasoning is supported by substantial evidence.

Contrary to plaintiff's argument, the ALJ appropriately discounted Dr. Johnson's opinion because it is inconsistent with his examination findings. *Tonapetyan*, 242 F.3d at 1149. Dr. Johnson indicated that plaintiff appeared cooperative throughout the examination and had clear speech. Tr. 438. Dr. Johnson also observed intact memory, attention and concentration, and slightly limited insight and judgment. Moreover, Dr. Johnson noted an absence of auditory or visual hallucinations or delusions. *Id.* Although plaintiff provides a different interpretation of the examination findings, I conclude that the ALJ made logical inferences from the record to support his conclusion. Because the ALJ's interpretation is rational and supported by substantial evidence in the record, it will not be disturbed. *Molina*, 674 F.3d at 1111.

Moreover, the ALJ rejected Dr. Johnson's opinion on the basis that it relies on plaintiff's discredited subjective allegations. *See Morgan*, 169 F.3d at 602 (ALJ properly discounted medical opinions based in large part upon claimant's own account of mental health symptoms.). For example, Dr. Johnson opined that plaintiff has a marked limitation in interacting with the public based solely on plaintiff's complaints of depression and his self-report of engaging in avoidant behaviors. Tr. 436. Indeed, Dr. Johnson documented cooperative behavior and intact attention and concentration, yet opined that plaintiff's lack of motivation, subsequent to his depressed mood, will affect his ability to perform tasks. Tr.436. Based on the information presented to Dr. Johnson and the unremarkable

17 - OPINION AND ORDER

objective findings, the ALJ could reasonably reject Dr. Johnson's opinion because it primarily relied on plaintiff's discredited allegations of severe depressive symptoms.

### C.    Gregory Cole, Ph.D.

Finally, plaintiff challenges the ALJ's evaluation of the medical opinion of Gregory Cole, Ph.D. In a May 2014 consultative examination, Dr. Cole noted that plaintiff appeared appropriately dressed and presented with a good mood and congruent affect. Tr. 462. Dr. Cole noted that plaintiff had good eye contact, some psychomotor agitation, and clear, slightly pressured speech. *Id.* Dr. Cole documented organized thought processing and content, fair insight and judgment, and an ability to complete simple multiple-step tasks perfectly. Tr. 463. Dr. Cole noted that plaintiff scored in the low average range for intelligence testing. Tr. 465. Dr. Cole diagnosed unspecified depressive disorder, unspecified anxiety disorder, unspecified personality disorder, cannabis use disorder, and provisionally bipolar and related disorder. Tr. 467.  In a mental RFC assessment, Dr. Cole opined that plaintiff has moderate limitations in understanding and carrying out complex tasks. Tr. 469. Dr. Cole also opined that plaintiff has moderate limitations in social functioning and a marked limitation in adapting to changes in the workplace. Tr. 470.

In giving "some weight" to Dr. Cole's assessment, the ALJ adopted a majority of the limitations in Dr. Cole's opinion. Tr. 27. Specifically, the ALJ found that plaintiff is able to understand and carry out simple tasks and restricted plaintiff to no public contact and occasional incidental coworker contact with no group tasks. Tr. 20. The ALJ also incorporated limited supervision, only one to two interactions per shift, in the RFC. *Id.* The ALJ only rejected Dr. Cole's opinion that plaintiff has a marked limitation in adapting to workplace changes. Having reviewed the record, I conclude the ALJ appropriately discounted Dr. Cole's opinion.

18 - OPINION AND ORDER

Contrary to plaintiff's argument, the ALJ adequately found that Dr. Cole partially relied on plaintiff's subjective complaints. *Morgan*, 169 F.3d at 602. In opining that plaintiff has a marked limitation in adapting to changes in a work setting, the ALJ reasonably found that Dr. Cole relied on plaintiff's allegations of pain and irritability with others. *See* Tr. 467 ("claimed problems with pain and tendency to become easily agitated/problems interacting with others" would affect plaintiff's ability to maintain employment). To be sure, Dr. Cole observed an engaged and cooperative attitude and reported relatively normal objective findings, including an ability to perform serial seven calculations without error. Tr. 463. Accordingly, I find that the ALJ gave a specific and legitimate reason, backed by substantial evidence to partially discredit Dr. Cole's opinion.

**III.    The ALJ did not Commit Reversible Error at Step Two**

Plaintiff argues that the ALJ erred in failing to find his right knee pain severe at Step Two. "At step two of the five-step inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-1290 (9th Cir. 1996). An impairment is "not severe" if it does not significantly limit plaintiff's ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). A plaintiff only can establish a medically determinable impairment at Step Two, "if the record includes signs—the results of 'medically acceptable clinical diagnostic techniques,' such as tests—as well as symptoms, i.e., [the claimant's] representations regarding his impairment." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

Step Two "is a *de minimis* screening device used to dispose of groundless claims," and an impairment or combination of impairments will only be found "not severe" if "the evidence

establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting *Yuckert*, 841 F.2d at 306).

At Step Two, the ALJ discussed medical evidence of plaintiff's right knee pain and found it non-severe. Specifically, the ALJ noted that plaintiff reported pain in his knees bilaterally, right greater than left, and pain in his left hip. Tr. 18. The ALJ further noted that imaging of plaintiff's right knee and left hip did not show any abnormal findings. *Id.* The ALJ found that the "physical examination findings did not document consistent functional limitations arising from plaintiff's pain complaints." Tr. 18. The ALJ also discussed the August 2012 consultative examination of Hayden Hamilton, M.D. In this case, Dr. Hamilton observed an antalgic gait favoring his right leg and less than 10 degrees extension on the right knee with crepitus. Tr. 383. Dr. Hamilton also noted intact strength with the exception of 4/5 strength in the right knee flexion. Dr. Hamilton diagnosed right knee pain and impaired range of motion and left hip pain per the claimant and opined that plaintiff could perform light level work. Tr. 384. Thus, Dr. Hamilton's examination revealed some objective findings in support of plaintiff's right knee pain.

Even assuming *arguendo* that the ALJ failed to find plaintiff's right knee impairment severe at step two, this error is harmless. Specifically, the ALJ provided an alternative step five finding demonstrating that even if the ALJ adopted Dr. Hamilton's opinion, the ALJ's ultimate conclusion of non-disability would remain unchanged. *See Stout v. Commissioner, Soc. Sec. Admin.,* 454 F.3d 1050, 1054-55 (9th Cir. 2006) (noting that ALJ commits harmless error when the mistake was "nonprejudicial" or "irrelevant" to the ultimate disability conclusion).

At the hearing, the ALJ posed a hypothetical to the VE incorporating all of the limitations of the RFC finding. Tr. 48. The VE testified that plaintiff could perform his past relevant work as

20 - OPINION AND ORDER

a janitor. *Id.* Then, the ALJ posed a second hypothetical, adding Dr. Hamilton's assessment of light work to the initial hypothetical. Tr. 48-49. The VE testified that plaintiff could not perform his past work as a janitor with the additional physical limitations. Tr. 49. However, the VE identified other jobs that plaintiff could perform at step five: table worker, Dictionary of Occupational Titles (DOT) #734.687-014 (250,000 jobs nationally and 1,500 in Oregon) and bagger, DOT #920.687-018 (500,000 jobs nationally and 1,000 jobs in Oregon). Tr. 49. Thus, the ALJ found that even with a limitation to light work, there are jobs available in significant numbers that plaintiff can perform, such as table worker or bagger. Tr. 28. To be sure, plaintiff contends that Dr. Hamilton's opinion accurately assesses his physical limitations. Pl Br. (ECF No. 16) at 19. Moreover, plaintiff does not challenge the ALJ's alternative step five finding.

Indeed, Dr. Hamilton's opinion generously accounts for plaintiff's complaints of pain from his alleged right knee limitations and is consistent with the overall medical evidence. For example, orthopedic surgeon William Turner, M.D., noted that plaintiff's November 2012 right knee MRI revealed a lateral tracking patella but no significant degenerative joint disease, meniscal pathology or internal derangements and ruled out surgical treatment. Tr. 412. In a December 2012 examination, Dr. Turner noted normal alignment of the knee and an absence of crepitus. *Id.* Dr. Turner diagnosed chronic patellar malalignment with no signs of internal derangement, but noted there was not much to offer plaintiff for his "nonspecific knee pain." *Id.* Similarly, other examinations of plaintiff's right knee have been relatively normal, including an absence of crepitus, tenderness, and swelling. *See generally* Tr. 308, 319, 359, 387, 447.

In summary, although the ALJ may have erred at step two, such an error is harmless because the ALJ provided an alternative step five finding that plaintiff can perform other work in the national

economy that existed in significant numbers, which accounted for these limitations. *Tommasetti*, 533 F.3d at 1042. Accordingly, the ALJ's ultimate finding of non-disability is supported by substantial evidence.

Finally, I reject plaintiff's argument that the ALJ's hypothetical posed to the VE was invalid because it did not include marked limitations from the opinions of Drs. Kemp, Johnson, and Cole. As discussed above, the ALJ properly discredited these opinions. The ALJ incorporated all credited limitations from the RFC finding in the hypothetical posed to the VE. Accordingly, the ALJ could rely upon the VE testimony. *Valentine*, 574 F.3d at 694; *Stubbs-Danielson*, 539 F.3d at 1175-76.

**CONCLUSION**

For the reasons stated above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this ___ *17* day of DECEMBER, 2015.

Malcolm F. Marsh
United States District Judge

22 - OPINION AND ORDER